**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| TIGER FIBERS, LLC, ATLANTIC ) <br> RECYCLING TECHNOLOGIES, LLC, ) <br>         Plaintiffs,               ) <br>                                              ) <br>          v.                                ) <br>                                              ) <br> ASPEN SPECIALTY            ) <br> INSURANCE COMPANY,    ) <br>         Defendant.              ) | Civil Action No. 1:07cv1106 |

**MEMORANDUM OPINION**

At issue in this diversity insurance action to recover for a business interruption loss is whether the loss appraisers nominated by each party qualify as "disinterested," as required by Virginia law. Va. Code § 38.2-2105. Defendant seeks to disqualify plaintiffs' appraiser on the ground that this appraiser is employed by the accounting firm plaintiffs retained to prepare an initial calculation of the loss, and as a result, defendant claims this appraiser will be biased in favor of the calculations provided by his accounting firm employer. Plaintiffs, in turn, contend that defendant's appraiser must be disqualified on the ground that he has a record of being retained exclusively by insurers and must therefore be biased in favor of insurers. For the reasons that follow, neither contention is disqualifying; both meet the "disinterested" requirement of Virginia law. *Id.*

I.[1]

Plaintiffs, Tiger Fibers, LLC and Atlantic Recycling Technologies, LLC (collectively "Tiger"), are Virginia limited liability companies that operate a plant in Lawrenceville, Virginia that

---

[1] The facts recited here are essentially undisputed and are derived from the record as a whole, including the pleadings and affidavits submitted by the parties.

manufactures, bags and prepares cellulose products such as insulation. Defendant Aspen Specialty Insurance Company ("Aspen"), a North Dakota surplus lines insurer with its principal place of business in Massachusetts, issued an insurance policy to Tiger in September 2005 covering property damage and business interruption losses at the Lawrenceville plant.

On December 7, 2005, a factory-machine fire significantly damaged portions of the Lawrenceville plant and its contents and caused an interruption in plant operations. As a result, Tiger filed insurance claims with Aspen for property damage suffered at the plant and for the loss stemming from the interruption in plant operations. Aspen made payments on certain of Tiger's claims, but declined to pay Tiger's claim for business interruption loss owing to a dispute with Tiger over the amount of that loss. Unable to resolve this dispute, Tiger eventually initiated the instant breach of contract action against Aspen, seeking to recover its business interruption loss in accordance with the terms of its insurance policy.

In the course of the proceedings, Aspen elected to invoke Virginia's statutory procedure for resolving insurance disputes of this sort by way of a form of arbitration. Specifically, this statutory procedure allows the parties to nominate "competent and disinterested" appraisers to prepare independent appraisals or estimates of the loss suffered, with any disputes or differences between the two appraisals to be submitted to an agreed-upon neutral umpire for resolution. Va. Code § 38.2-2105. In accordance with this procedure, on January 18, 2008, Aspen nominated Jack Heil ("Heil") of North Carolina as its respective appraiser. Tiger then responded on February 6, 2008, naming Hayes Walker ("Walker") of Virginia as its selected appraiser. At the same time, Tiger alerted

Aspen that Heil was not qualified under the statute because he was not a Virginia resident.[2] Even so, Tiger nonetheless offered to waive the statutory residency requirement for Heil provided Aspen would agree to accept Walker as Tiger's appraiser. Aspen refused, choosing instead on March 14, 2008, to replace Heil with Virginia resident Les Robson ("Robson"). Aspen also objected to Walker serving as Tiger's appraiser on the ground that Walker, as an employee of Rollins Accounting and Inventory Services, Inc. ("Rollins"), had an indirect financial interest in the outcome of the appraisal. This objection stemmed from the fact that Rollins had previously been retained as Tiger's primary business interruption expert and had prepared a report in 2007 estimating the damages suffered by Tiger as a result of the Lawrenceville plant fire, including the business interruption loss at issue here.[3]

By Order dated April 8, 2008, all further proceedings in this matter were stayed pending the parties' completion of the statutory appraisal and arbitration process. *See Tiger Fibers, LLC, et al. v. Aspen Specialty Insurance Company*, 1:07cv1106 (E.D. Va. Apr. 8, 2008) (Order). Yet, when the parties were unable to resolve their dispute over whether their respective appraisers qualified as "disinterested" under the statute, each filed a cross-motion to disqualify their opponent's nominated appraiser. The matter was thereafter fully briefed and argued, and a ruling issued from the bench on May 23, 2008, denying the parties' cross-motions to disqualify and holding that both nominated appraisers were appropriately "disinterested" as required under the Virginia statute. *See Tiger*

---

[2] Virginia Code § 38.2-2112 provides, in pertinent part, that "[w]henever any appraisal is to be made under the standard provisions of a policy for loss or damage to property, the appraisers...shall be citizens and actual residents of this Commonwealth unless otherwise agreed to in writing by the insured and the insurer." Va. Code § 38.2-2122.

[3] Specifically, Rollins had estimated Tiger's business interruption loss as $799,587.

*Fibers, LLC, et al. v. Aspen Specialty Insurance Company*, 1:07cv1106 (E.D. Va. May 23, 2008) (Order). This memorandum opinion records and elucidates the reasons underlying that ruling.

II.

As the parties dispute whether their nominated appraisers are appropriately "disinterested," it is important to set forth the pertinent facts relevant to each appraiser. In this regard, Walker — Tiger's designated appraiser — is a Virginia-licensed Certified Public Accountant (CPA) who reviews business interruption claims and damage calculations. He has been employed by Rollins for fourteen years, serving as an appraiser and qualified expert witness on numerous occasions. Walker has not previously provided any services specifically to Tiger, nor did he assist Rollins in any way in its preparation of Rollins's 2007 damages report submitted to Tiger in connection with the Lawrenceville fire. And finally, with respect to Walker's fees, it is important to note that Tiger will be reimbursed by Aspen for its portion of the fees and costs associated with the appraisal process, as required under the terms of the statute where, as here, an insurer invokes the statutory appraisal process. Va. Code § 38.2-2105.[4]

Like Walker, Aspen's second-nominated appraiser — Robson — is a CPA licensed in

---

[4] Specifically, on this issue the statute provides as follows:

> Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally; provided, however, if the written demand is made by this Company, then the insured shall be reimbursed by this Company for the reasonable cost of the insured's appraiser and the insured's portion of the cost of the umpire.

Va. Code § 38.2-2105.

Virginia.[5] He is the sole stockholder and employee of Robson, PC, with twenty-nine years of forensic accounting experience resolving insurance disputes over various types of business damage claims. Robson works as an independent contractor on an hourly-fee basis and has never before contracted with Aspen. Although he has never been an insurance company employee, Robson has been retained as an independent contractor by insurance companies more than 200 times in the last year and a half to provide various insurance-related professional services. Moreover, like Walker, Robson has served as an appraiser in multiple disputes involving claims for business interruption loss.

These facts, applied here, present two principal questions, namely (i) whether an appraiser is "disinterested" under the Virginia statute where, as in the case of Robson, the appraiser, while not technically employed by any insurance company, is retained almost exclusively by insurance companies to perform appraisals, and (ii) whether an appraiser is "disinterested" where, as with Walker, the appraiser's employer was separately retained to perform an initial estimate of the business interruption loss at issue. Resolution of these questions necessarily begins with a review of Virginia law and the specific language of the statute itself.

III.

Virginia law[6] has long provided a sensible means of resolving fire insurance claims by way

---

[5] The record further reflects that Robson is also licensed in North Carolina.

[6] It is clear that Virginia law governs this dispute given that Tiger's insurance policy was issued in Virginia. This is so because a district court sitting in a diversity action, as here, must apply the choice of law rules applicable to the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). And, in Virginia, "the law of the place where an insurance contract is written and delivered controls issues as to its coverage." *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635-36 (4th Cir. 2005) (internal citation omitted).

of a form of arbitration, thereby allowing the parties the opportunity to settle their disputes without resorting to costly litigation. In essence, when an insurer and its insured disagree as to the actual value of a loss, either party may invoke the prescribed process set forth in § 38.2-2105 of the Virginia Code and thereby demand an appraisal of the disputed loss. In this regard, the Virginia statute provides that both parties must select "competent and disinterested" appraisers who must then jointly nominate a "competent and disinterested" umpire within fifteen days. Va. Code, § 38.2-2105. Importantly, the nominated appraisers and umpire may not be "directly or indirectly in the employment of the insured, the insurer or any other insurer . . .." *See* Va. Code § 38.2-2122.

Once selected and agreed upon, the parties' respective appraisers independently appraise the actual cash value loss of each separate item at issue and, if they reach agreement, the agreed-upon amount is deemed to be the actual loss for purposes of the insurance dispute at issue. *See* Va. Code. 38.2-2105. However, in the event the parties' appraisers disagree as to the amount of loss in question, they must then submit their differences to the neutral umpire. *Id.* And, after submission of such a dispute to the neutral umpire, the statute, without any further discussion or elucidation, provides that "[a]n award in writing, so itemized, of any two when filed with [the insurer]...shall determine the amount of actual cash value and loss." *Id.*[7]

---

[7] This specific statutory language is somewhat ambiguous in that it lends itself to several alternative interpretations. For example, the statement may arguably be read to mean that the neutral umpire must select and agree with one of the two loss figures presented by the parties' respective appraisers, rather than to conduct any independent analysis that might lead to a third figure. On the other hand, the statement may also be read to mean that the umpire is entitled to reach a separate conclusion as to the actual value of the loss and to then try to convince one or both of the appraisers to agree with that third figure. This possible ambiguity in the prescribed procedure is neither presented by the parties' cross-motions, nor decided here.

Although the Virginia statutory appraisal procedure has been in effect for the better part of a century, there is remarkably scant authority interpreting or applying the statute, including the meaning of the important statutory term "disinterested." The statute itself does not define this term, nor is there any reason that it should have done so since the term "disinterested" has a plain and unambiguous common meaning. And in Virginia, where, as here, a statutory term "is plain and unambiguous, there is no need for judicial construction; the language will be applied as written." *Gillespie v. Commonwealth*, 636 S.E.2d 430, 432 (Va. 2006) (citing *Tiller v. Commonwealth*, 69 S.E.2d 441, 442 (Va. 1952)). The plain and ordinary meaning of the word "disinterested," as confirmed by any standard English dictionary, is "lacking or revealing lack of interest," "not influenced by regard to personal advantage," "free from selfish motive," or "not biased or prejudiced." *See Webster's Third New International Dictionary* 650 (1993). Virginia's meager case law is in accord with this plain meaning.

The principal Virginia case addressing the issue of disinterested appraisers is *Hurst v. Hope*, 147 S.E. 222, 223 (Va. 1929). In that case, the Supreme Court of Virginia concluded that employees on the payroll of either an insurer or the insured are not qualified to serve as appraisers because they do not satisfy the disinterestedness requirement of the statute. *See id.* (recognizing that "the persons selected to make [appraisal decisions] should be free from the control and direction of the respective parties . . . and should act independently and upon their own judgment") (quoting *Connecticut, etc. Insurance Co. v. Cohen*, 55 A. 675, 677 (Md. 1903)). Yet, the court in *Hurst* took great care to distinguish an appraiser's temporary retention by a particular party from permanent employment by that party, finding that an individual who has been retained by a business for a single action, lawsuit

or appraisal is not regularly or continuously employed by that entity for purposes of the disinterestedness analysis. *Hurst,* 147 S.E. at 222-23 (stating that an "[employee] is understood to mean some permanent employment or position. . . . [and that] [a]n attorney serving as division counsel for a railroad, and regularly retained, is an employee, while one retained for a single suit is not") (internal citations omitted). Without this distinction, the court sensibly concluded, "the statute would be inoperative, for the arbitrator when secured would . . . by the very act of his selection be made ineligible to serve." *Id.* at 223.

In the only other case specifically addressing this issue, *Equitable Ins. Co. v. Stieffens,* 153 S.E. 731, 732-33 (Va. 1930), the Supreme Court of Virginia found that serving as an appraiser for a single company multiple times does not render an individual lacking in disinterestedness. *Id.* There, the selected appraiser had served in a similar capacity for the insurer on numerous occasions, yet was found to have "no interest in the matter" as he was not employed by the insurance company, did not draw a salary from either party and was paid on a *per diem* basis. *Id.*[8]

In sum, then, a review of the statute and relevant case law points persuasively to the conclusion that the disinterestedness of a selected appraiser pertains only to the partiality of that appraiser for or against the specific parties in issue. And, as *Hurst* and *Steiffens* make clear, only permanent employees of a party to the dispute, as contrasted with persons temporarily retained by the parties, lack the disinterestedness required by the statute.

---

[8] The Fourth Circuit, applying North Carolina law in a diversity matter, has also spoken on this issue, stating that they "would be loathe to hold that the mere fact that an appraiser has served in appraisal proceedings on previous occasions for a party to an arbitration constitutes conclusive evidence of bias or partiality." *Firemen's Fund Ins. Co. v. Flint Hosiery Mills*, 74 F.2d 533, 535 (4th Cir. 1935), *cert. denied, Flint Hosiery Mills v. Homeland Ins. Co.*, 295 U.S. 748 (1935).

IV.

The final step in the analysis is to apply these legal principles to the specific appraisers challenged here. And in this regard, the parties' dispute with respect to Robson — Aspen's selected appraiser — is quite easily answered given the controlling and dispositive decision of the Supreme Court of Virginia in *Hurst*. *See supra,* Part III. As previously discussed, the court there ruled that a separately-employed marine architect selected by the insured as its arbitrator[9] in a fire insurance dispute did not automatically become an "employee" of the insured solely because of his selection. *Hurst*, 147 S.E. at 222-23. Consequently, because he was not under the authority or control of the insured, the selected arbitrator in *Hurst* had no specific interest in the matter at issue and was qualified to serve in accordance with the terms of the statute. *Id*.

That principle, applied here, compels the conclusion that Robson — an independent contractor retained by Aspen as its appraiser in this single business interruption matter — is not employed by Aspen and thus cannot be disqualified on that ground. Put differently, Aspen's one-time retention of Robson to act as an appraiser on its behalf does not confer continuous employment status on him so as to disqualify him under the statute. *See id.* (distinguishing temporary retention and permanent employment). And, contrary to Tiger's argument, the mere fact that Robson may regularly or even exclusively be retained by insurance companies to render professional services in various insurance-related matters does not amount to continuous employment sufficient to alter the conclusion reached here. Moreover, Robson's regular retention by insurance companies does not make him biased toward a favorable or specific outcome for either party in this dispute, particularly

---

[9] The relevant section of the Virginia Code has been updated since *Hurst,* but for purposes of this analysis the terms arbitrator and appraiser are used interchangeably.

Aspen. Indeed, Robson has never before performed any professional services on Aspen's behalf, and there is no reason to assume that he would be biased toward Aspen simply because he is regularly retained by other insurance companies to perform similar services.[10] Nor does the record reflect that Robson consistently reaches determinations favoring an insurer over an insured. In fact, the only interest Robson has in the instant matter is to perform the independent appraisal for which Aspen retained him at an hourly rate. For this reason, he qualifies as "disinterested" under the statute and Tiger's cross-motion for Robson's disqualification is appropriately denied.

The question whether Walker, as Tiger's nominated appraiser, meets the disinterestedness criterion requires a somewhat different analysis. As noted above, Walker is not employed by Tiger or any insurance company, but is instead a long-time employee of Rollins — the same firm Tiger retained to perform its initial damages assessment after the Lawrenceville plant fire. Put simply, because the question of disinterestedness pertains to the relationship between the appraiser and the parties in dispute, not the appraiser's partiality for or against any third party (in this case Rollins), any alleged bias Walker may have in favor of the conclusions reached by Rollins in its initial damages report is irrelevant. S*ee Stieffens*, 153 S.E. at 732. Indeed, as already discussed, the Virginia Code seeks to prevent nominated appraisers from being influenced by the respective parties,[11] and Rollins clearly is not a party to this dispute. This being so, Walker, like Robson, is

---

[10] Also unpersuasive is Tiger's argument that Robson has a specific interest in reaching a decision favorable to Aspen in this case given Robson's presumed desire to be retained by Aspen and other insurers in the future. The illogic of this argument would lead to the disqualification of all independent contractors, as they would all presumably hope to be retained again in the future by any entity that retains them.

[11] Va. Code 38.2-2122.

appropriately disinterested in accordance with the Virginia statute and Aspen's cross-motion for Walker's disqualification is properly denied.

V.

In summary, the Virginia statutory insurance loss appraisal process requires the parties to nominate appraisers who are "disinterested," which simply means that the selected appraisers can have no personal interest in the outcome of the insurance dispute. The selected appraisers must therefore not be permanently employed by either the insured or the insurer, or by any other insurer,[12] but instead must be retained solely as independent contractors providing temporary professional services to the respective parties. Importantly, nothing in the Virginia statutory procedure precludes an insured from nominating as an appraiser, as Tiger did, an employee of the firm it retained to provide an initial estimate of the disputed loss. Nor does the statute preclude an insurer from appointing as an appraiser, as Aspen did, an independent contractor who, the record reflects, is retained almost exclusively by insurance companies to provide professional services. In the circumstances, therefore, both nominated appraisers — Walker and Robson — are sufficiently disinterested to serve as the parties' appraisers in this instance and neither warrants disqualification.

An appropriate order has issued.

/s/
_____

Alexandria, VA  
August 15, 2008

T. S. Ellis, III  
United States District Judge

---

[12] *See* Va. Code § 38.2-2122 (providing that the nominated appraisers may not be "directly or indirectly in the employment of the insured, the insurer or any other insurer").